UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL DEARING, | ) | 1:03-CV-05364 LJO JMD HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| MIKE KNOWLES, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently confined at Mule Creek State Prison pursuant to a judgment of the Superior Court of California, County of Tulare. (Answer at 1.) Petitioner pled no contest to 18 counts of violating Penal Code section 288(a), 21 counts of violating section 289(j), and 6 misdemeanor violations of section 311.3. (Id. at 2.) Petitioner admitted that he had inflicted great bodily injury on the victim pursuant to section 667.61(e)(3) and that he had substantial sexual contact with the victim within the meaning of section 1203.066(a)(8). (Id.) On June 4, 1998, the trial court sentenced Petitioner to a prison term of 82 years and to an indeterminate term of 15 years to life pursuant to section 667.61(e)(3). (Answer at 2; Ex. 1.)

On January 3, 2000, the California Court of Appeal, Fifth Appellate District, affirmed Petitioner's conviction for inflicting great bodily injury as alleged in count 36. (Answer, Ex. 2.)

On January 18, 2000, Petitioner filed a petition for review with the California Supreme Court. On January 23, 2000, the court denied the petition. (Answer at 2.)

On February 14, 2000, Petitioner filed a second petition for review with the California Supreme Court. On March 22, 2000, the court denied the petition. (Answer at 2; Ex. 4.)

On October 30, 2000, Petitioner filed a petition for writ of habeas corpus with the Tulare County Superior Court. On September 26, 2001, the court denied the petition. (Answer, Ex. 3.)

On February 14, 2002, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. On February 25, 2003, the court denied the petition. (Answer, Ex. 5.)

On March 25, 2003, Petitioner filed the instant petition in this Court. The petition presents the following two grounds for relief: 1) Petitioner was not mentally competent to enter no contest pleas; and 2) the no contest pleas were not made knowingly and intelligently because Petitioner was misinformed as to the maximum sentence he could receive.

On August 14, 2003, Respondent filed an answer to the petition.

On October 3, 2003, Petitioner filed a traverse to the answer.

**FACTUAL BACKGROUND**

On September 11, 1997, the Tulare County District Attorney filed an information charging Petitioner with 19 counts of violation of section 288(a), 21 counts of violation of section 289(j), and six misdemeanor counts of violation of section 311.3. (Answer at 6.)

On September 16, 1997, Petitioner pled not guilty to all counts. (Id.)

On April 29, 1998, after a jury had been selected, but before the presentation of any evidence, Petitioner elected to enter no contest pleas to all charges except counts 38 and 39 which were dismissed by the prosecution. (Id.)

On June 4, 1998, the trial court sentenced Petitioner to a prison term of 82 years on counts 1 through 35 and 37 and to an indeterminate term of 15 years to life on count 36. The court sentenced Petitioner to 30 days in jail on each of counts 40 through 45. (Id. at 6-7.)

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

U.S. District Court
E. D. California

Jp

3

1  As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Review of Petitioner's Claims

#### A.  Ground One

Petitioner contends that his no contest pleas were invalid because the trial court failed to inquire as to his competency prior to accepting his pleas.  Petitioner argues that his mental health reports and the fact that he was housed in the jail's mental health facility put the court on notice that he may have been incapable of making a knowing and intelligent plea.

This claim was presented by motion to the Tulare County Superior Court prior to June 4, 1998.  (Reporter's Transcript of June 4, 1998 at 3-9.)  On June 4, 1998, the court denied the claim for reasons stated on the record.  (Id. at 6-9.)  The issue was then raised in a petition for writ of habeas corpus to the California Supreme Court which summarily denied the petition.  (Answer, Ex. 5.)  The California Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Tulare County Superior Court found that, despite the fact that Petitioner had been on suicide watch shortly before entering the no contest pleas, there was insufficient evidence to show that he was too mentally unstable to enter pleas that were knowing and intelligent.  (Reporter's Transcript of June 4, 1998 at 6-9.)

"[A] hearing is required on a defendant's competency to plead guilty whenever the trial judge entertains or reasonably should entertain a good faith doubt as to that defendant's ability to understand the nature and consequences of the plea or to participate intelligently in the proceedings and to make a reasoned choice among the alternatives presented." Chavez v. U.S., 656 F.2d 512, 517 (9th Cir. 1981); see also People v. Stankewitz, 32 Cal.3d 80, 91-92 (1982).  The hearing is not required, however, absent a substantial or bona fide doubt of competency after considering all the evidence.  Hernandez v. Ylst, 930 F.2d 714, 716 (9th Cir. 1991).  "There are no particular facts which invariably signal incompetence, but important factors which merit a judge's attention include:

1 irrational behavior, demeanor before the trial court, and available medical evaluations." U.S. v.
2 Lewis, 991 F.2d 524, 527 (9th Cir. 1993).

3       The trial court's determination that there was insufficient evidence to warrant a competency
4 hearing was not unreasonable. Petitioner, in support of his argument that such a hearing should have
5 been ordered, points to his inmate medical record and to the fact that he was housed in the mental
6 health facility of the county jail. (Petition at 6.) The April 25, 1998 "mental health follow up" states
7 that Petitioner "is very tearful - sad affect - He continues to fear there is a conspiracy to make his
8 case worse than it has to be. . . . He is on 30 min checks [and] those should remain." (Traverse, Ex.
9 1.) The April 27, 1998 record states as follows:

> [Petitioner] was clear, rational, well oriented, calm and relaxed. He denied any
> suicidal thoughts. I allowed him time to talk about his situation which may have been
> helpful. We will follow up as needed. . . . [Petitioner] allegedly stated today that he
> would not be alive by tomorrow a.m. Appeared very depressed. Denies having made
> the specific statement. Alleges he has a support network including family members,
> cellee, Bible, reading. Says most stressful point will come in ~2 weeks later into trial
> from now. Says support from Crisis Team is also very useful. Plan: continue on 15
> min watch, move to closer holding cell when 1st possible.

(Traverse, Ex. 1.)

      Despite the fact that Petitioner was on suicide watch prior to the entry of the no contest pleas, his demeanor before the trial court demonstrated that he understood the nature and consequences of the pleas and that he was capable of participating intelligently in the proceedings and of making a reasoned choice among the alternatives presented. At the time the pleas were entered, the following exchange occurred between Petitioner, his counsel, and the trial court:

> [Defense Counsel]: Yes your Honor. [Petitioner] is going to enter a no contest plea to
> the felony counts involving [the victim]. That would be felony section 288(a) and
> 289(j), none of which involve any forcible conduct. He will additionally enter pleas
> of no contest pursuant to People versus West to the misdemeanor counts of Penal
> Code Section 311.3. . . . [¶] [Petitioner] will be entering this no contest plea pursuant
> to People versus West, among reasons being because of his concern for the well being
> and the welfare of the minor . . . and to avoid any further trauma or distress to her.
>
> . . .
>
> [The Court]: [Petitioner], do you understand everything that's just been related on the
> record by both your attorney and Mr. Girardot, the deputy DA?
>
> [Petitioner]: Yes, I do.
>
> [The Court]: Do you have any question about any of those consequences as indicated

1 so far?

2 [Petitioner]: No, I don't.

3 [The Court]: I also need to add, obviously, other consequences are [sic] you are exposing yourself to up to a ten thousand dollar fine. You obviously would have
4 these felony and misdemeanor convictions on your record. And at some period of time you would be eligible for parole. However, if you were sentenced to the life top,
5 parole could remain open for the balance of your life. If there was no life top, in other words, if the great bodily injury allegation were stricken or you were not sentenced on
6 it in some manner by the court, then parole could last for up to three years, with a return to prison for one year if you violated any parole condition. Do you understand
7 all those various consequences?

8 [Petitioner]: Yes, your Honor.

9 [The Court]: Has anybody made you any promises, other than what's been talked about here in open court, to get you to change your plea?
10

11 [Petitioner]: No, your Honor.

12 [The Court]: Your attorney indicated this is what we call a People versus West plea, in which you would be entering no contest pleas, as your attorney indicated, to
alleviate or not have the victim in this case have to go through the ordeal of testifying
13 here in open court before the jury, and that you would be entering a no contest plea. Do you understand that the no contest plea is the same as a guilty plea as far as the
14 court's ability to sentence you and the effect it has as a conviction on your record?

15 [Petitioner]: Yes, your Honor.

16 [The Court]: Is that aspect about a People versus West plea, that is that you are doing this in order to relieve the victim of having to testify, is that a correct statement of the
17 situation as to why you are entering into this disposition?

18 [Petitioner]: Yes.

19 [The Court]: As you undoubtedly are aware, there are certain rights I have to make sure are indicated on the record and that you are aware of them and voluntarily waive
20 those rights. First of all, is the right to have a jury trial. We were just about to start testimony in that trial. Are you giving up your right to have a jury trial in this case?
21

22 [Petitioner]: Yes, your honor.

23 [The Court]: Should you have that trial, of course, you'd have the right to have your attorney – first of all, have the witnesses who would be testifying against you brought
here into open court, testify in front of you and have your attorney cross-examine
24 those witnesses, as well as the right to bring in witnesses to testify for you. If you wished, you could testify for yourself. Do you understand all those various rights?
25

26 [Petitioner]: Yes, I do.

27 [The Court]: Do you give up each of those?

28 [Petitioner]: Yes.

> [The Court]: Lastly, you have the right to remain silent. Even though you are not going to be saying anything necessarily about this case or pleading guilty, that right to remain silent still covers the right not to plead no contest. Do you understand the right to remain silent?
>
> [Petitioner]: Yes.
>
> [The Court]: Do you give it up so you can enter a no contest plea?
>
> [Petitioner]: Yes, your Honor.
>
> [The Court]: Are there any questions you need to ask either your attorney or myself before we formally start taking these pleas that you need to discuss?
>
> (The proceedings went off the record.)
>
> [The Court]: You've had a brief conversation with Mr. Kampar just now. Do you have any other questions you wish to ask?
>
> [Petitioner]: No, your Honor.

(CT 352-58.) Further, the Report and Recommendation of the Probation Officer filed May 29, 1998 with the trial court stated that Petitioner reported he was in fair mental condition and that, although he had been seeing Mental Health since his incarceration, he was not on any medication. (Report and Recommendation of the Probation Officer at 10.)

Petitioner has failed to show that the totality of evidence before the trial court demonstrated a substantial or bona fide doubt about his competency to enter the no contest pleas.

**B. Ground Two**

Petitioner contends that his Sixth and Fourteenth Amendment rights were violated when the trial court sentenced him to an 82-year determinate term plus fifteen years to life indeterminate after promising that he would only receive fifteen years to life plus six. Petitioner argues that his no contest pleas were not knowledgeable because he was misinformed as to the maximum sentence he could receive.

This claim was presented in a petition for writ of habeas corpus to the Tulare County Superior Court on October 30, 2000. (Answer, Ex. 3.) It was denied on September 26, 2001 for reasons stated on the record following an evidentiary hearing. (Reporter's Transcript of September 26, 2001 at 6-9, 14-17, 21-23.) It was then raised in a petition for writ of habeas corpus to the California Supreme Court which summarily denied the petition. (Answer, Ex. 5.) The California

Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Tulare County Superior Court found that, despite the fact that the maximum sentence was not stated on the record, Petitioner did not suffer prejudice by entering his no contest pleas because he entered them solely to save the alleged victim from having to testify at trial, not based on an agreed upon or stipulated range of sentence. (Reporter's Transcript of September 26, 2001 at 22.) The court noted that neither Petitioner nor his attorney objected to the sentence proposed by the probation report or to the sentence pronounced by the trial judge even though Petitioner had been vocal throughout the proceedings. (<u>Id.</u> at 22-23.) The court also found that the petition was untimely. (<u>Id.</u> at 23.)

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. [Citation] Second, is the right to trial by jury. [Citation] Third, is the right to confront one's accusers. [Citation] We cannot presume a waiver of these three important federal rights from a silent record." <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969) "In compliance with the mandates of [<u>Boykin</u>], we have held that when a guilty plea is accepted the record must contain on its face direct evidence that the defendant was advised of the rights to confrontation, to jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of the plea. [Citation] However, the requirement that an accused be advised of the consequences of the plea is not constitutionally compelled and failure to advise as to consequences constitutes error which requires that the plea be set aside only if prejudice is demonstrated." <u>People v. Edelbacher</u>, 47 Cal.3d 983, 1031-32 (1989). Prejudice is shown if the defendant establishes that he or she "would not have entered the plea of guilty had the trial court given a proper advisement." <u>In re Moser</u>, 6 Cal.4th 342, 352 (1993).

The state court's determination that Petitioner's Sixth and Fourteenth Amendment rights were not violated by the acceptance of his pleas without specifically informing him of the maximum sentence was not unreasonable. Petitioner was advised of his right against self-incrimination, his

right to a jury trial, and his confrontation rights. (CT 356-57.) Further, Petitioner has not established that he was misinformed of the maximum possible sentence or that he would have pled differently had he known. Petitioner acknowledged on the record prior to entering the no contests pleas that he was doing so for the express purpose of relieving the victim of having to testify. (<u>Id.</u> at 356.) He did not state that it was based on any promise relating to his sentence or in exchange for a particular sentence. The following exchange, which also occurred prior to Petitioner's entry of the no contest pleas, discloses that the "maximum sentence" that was discussed by the trial court and counsel related solely to the charge under section 667.61(c)(7):

> [Defense Counsel]: The only other matter is that one of the allegations involves an allegation of bodily injury pursuant to 12022.7 and a 677.61. It's stipulated and agreed that allegation pertains to the [victim], becoming impregnated and subsequently having an abortion. That's the nature and the substance of the GBI in this case. By the plea we're not waiving any appeal right to the propriety of that allegation, that is GBI being supported by a pregnancy as opposed to more traditional injury, such as a knife wound or broken bone. We do intend to appeal if it's imposed at sentence. It would be without a waiver to that. Other than that, we're prepared to proceed with the entry of no contest plea pursuant to People versus West.
>
> [The Court]: Let me add something to that. I think you misstated the great bodily injury allegation. The code number would be 667.61(c)(7).
>
> [The Prosecutor]: Yes, your Honor. That's not the 12022.7.
>
> [Defense Counsel]: Correct.
>
> [The Prosecutor]: The GBI alleged is the aborted pregnancy.
>
> [The Court]: Mr. [prosecutor], you and [defense counsel] have worked out the maximum sentence that would be available or possible under this particular scenario as being what?
>
> [The Prosecutor]: I believe we figured it is fifteen years to life, plus six.

(CT 354-55.) Further, as the Court pronounced sentence as to each of the individual counts, Petitioner failed to object to the sentence or otherwise make it known that he believed his total sentence would be no more than 15 years to life. (Reporter's Transcript of June 4, 1998 at 23-31.)

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

1   This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    June 12, 2008**                    **/s/ John M. Dixon**
                                               UNITED STATES MAGISTRATE JUDGE